UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | No. 1:25-CR- |
| : | |
| v. : | (Judge                    ) |
| : | |
| **WAYLON WILCOX**, : | (electronically filed) |
| Defendant : | |

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

At times material to this Information:

1.    WAYLON WILCOX resided within the Middle District of Pennsylvania.

2.    The Internal Revenue Service (IRS) was an agency of the United States Department of the Treasury responsible for administering the tax laws of the United States and collecting taxes owed to the United States.

3.    Non-fungible tokens (NFTs) were digital assets that had been tokenized via a blockchain. NFTs were assigned unique identification codes and metadata that distinguished them from other tokens. NFTs could not be copied, substituted, or subdivided. The ownership of an NFT was recorded in the blockchain and could be transferred by the owner,

allowing NFTs to be traded and sold for money or cryptocurrency. The value of an NFT was based on the value the market and owners placed on them. NFTs typically contained references to digital files such as artwork, photos, videos, and audio.

4.    Cryptocurrencies were tokens as well; however, the key difference was that two cryptocurrencies from the same blockchain were interchangeable, also referred to as fungible. Two NFTs from the same blockchain could look identical but were not interchangeable, meaning they were non-fungible.

5.    Ethereum was a decentralized global software platform powered by blockchain technology. It was most known for its native cryptocurrency, ether (ETH). The fair market value (FMV) of ETH fluctuated between 2017 and 2023. In June 2017, one ETH token had a FMV of approximately $300. In October 2021, one ETH token had a FMV of approximately $3,500. From January through April 2022, one ETH token had a FMV of approximately $3,000. As of May 2024, one ETH token had a FMV of approximately $3,400.

6.    All ETH transactions were recorded on what was known as the Ethereum blockchain. The Ethereum blockchain was essentially a

2

distributed public ledger that kept track of all incoming and outgoing ETH transactions. The Ethereum blockchain recorded every ETH address that ever received ETH and maintained records of every transaction. All records on the Ethereum blockchain were publicly available.

7.    Generally, a wallet was a software application that allowed Ethereum users to easily send and receive ETH and store their private keys for their ETH addresses.

8.    CryptoPunks was an Ethereum-based NFT collection of 10,000 unique art characters created by a software development company. CryptoPunks was the name of the NFT collection and individual NFTs in the collection were referred to as "Punks." Out of the 10,000 Punks, there were 6,039 males, 3,840 females, 88 zombies, 24 apes, and nine alien Punks. Punks were algorithmically generated pixel art images inspired by the punk music scene, electronic music artists, and the cyberpunk aesthetic. Each of the Punks was an image of a face.

9.    In June 2017, the software development company offered 9,000 of the 10,000 Punks to anyone in exchange for the cost in ETH to validate the Punks on the Ethereum blockchain. The cost was the

3

equivalent of approximately 11 cents per Punk acquired. The process to claim a Punk required an individual to have an existing Ethereum wallet and required the individual to download a file. A user would then access the Punk contract at a specific address provided by software development company and choose a specifically numbered Punk not yet claimed.

10.   When a taxpayer sold an NFT, including a Punk, then the taxpayer had to report sales proceeds and any gains or losses from the sale of the NFT on their tax return. A taxpayer reported sales proceeds and any gains or losses from the sale of NFTs on an IRS Form 8949, Sales and Other Dispositions of Capital Assets. The totals from the IRS Form 8949 would flow onto the taxpayer's Schedule D, Capital Gains and Losses. Both the IRS Form 8949 and Schedule D would be attached to the taxpayer's Form 1040, U.S. Individual Income Tax Return. To determine the gain or loss from the sale, the taxpayer would subtract their basis from the sales proceeds. The basis was generally the price that the taxpayer paid to purchase the NFT.

## COUNT 1
### 26 U.S.C. § 7206(1)
(Making and Subscribing a False Individual Income Tax Return)

11. Paragraphs 1 through 10 are incorporated here.

12. In 2021, WILCOX sold more than 62 Punks for a total of approximately $7,402,935.

13. On or about April 10, 2022, in Cumberland County, within the Middle District of Pennsylvania, the defendant,

**WAYLON WILCOX**,

did willfully make and subscribe a Form 1040 (U.S. Individual Income Tax Return) for tax year 2021, which was verified by a written declaration that it was made under the penalties of perjury and which he did not believe to be true and correct as to every material matter. That document, which the defendant signed in the Middle District of Pennsylvania and filed with the Internal Revenue Service, included statements that the defendant knew to be false, to wit,

a. the defendant falsely declared under penalty of perjury that he did not receive, sell, exchange, or otherwise dispose of any financial interest in any virtual currency at any time during 2021 though the

defendant knew that this declaration was false because he sold Punks, NFTs, and cryptocurrencies that year; and

b. the defendant falsely declared under penalty of perjury that the return and accompanying schedules and statements were true, correct, and complete though the defendant knew that this declaration was false because he failed to report any proceeds from the sale of Punks, NFTs, and cryptocurrencies in 2021.

These false statements had the effect of underreporting the defendant's taxable income for tax year 2021 by approximately $8,511,238 and reducing the defendant's tax then due and owing by approximately $2,180,453.

All in violation of Title 26, United States Code, Section 7206(1).

THE UNITED STATES ATTORNEY FURTHER CHARGES:

## COUNT 2
26 U.S.C. § 7206(1)
(Making and Subscribing a False Individual Income Tax Return)

14.    Paragraphs 1 through 10 are incorporated here.

15.    In 2022, WILCOX sold approximately 35 Punks for a total of approximately $4,899,180.

16.    On or about October 10, 2023, in Cumberland County, within the Middle District of Pennsylvania, the defendant,

## WAYLON WILCOX,

did willfully make and subscribe a Form 1040 (U.S. Individual Income Tax Return) for tax year 2022, which was verified by a written declaration that it was made under the penalties of perjury and which he did not believe to be true and correct as to every material matter. That document, which the defendant signed in the Middle District of Pennsylvania and filed with the Internal Revenue Service, included statements that the defendant knew to be false, to wit,

   a. the defendant falsely declared under penalty of perjury that he did not sell, exchange, gift, or otherwise dispose of a digital asset, or a financial interest in a digital asset at any time during 2022 though

7

the defendant knew that this declaration was false because he sold Punks, NFTs, and cryptocurrencies that year; and

b.  the defendant falsely declared under penalty of perjury that the return and accompanying schedules and statements were true, correct, and complete though the defendant knew that this declaration was false because he failed to report any proceeds from the sale of Punks, NFTs, and cryptocurrencies in 2022.

These false statements had the effect of underreporting the defendant's taxable income for tax year 2022 by approximately $4,599,532 and reducing the defendant's tax then due and owing by approximately $1,098,623.

All in violation of Title 26, United States Code, Section 7206(1).

JOHN C. GURGANUS
Acting United States Attorney


March 23, 2025                          s/ David C. Williams
                                        DAVID C. WILLIAMS
                                        Assistant United States Attorney
                                        PA 308745
                                        1501 N. 6th Street, P.O. Box 202
                                        Harrisburg, PA 17102
                                        Phone: (717) 614-4245
                                        Fax: (717) 221-4493
                                        david.williams4@usdoj.gov

8