# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **NO.  1:25-CR-96-MEM** |
| | : | |
| **WAYLON WILCOX,** | : | |
| | : | **JUDGE MANNION** |
| **Defendant.** | : | |
| | : | **ELECTRONICALLY FILED** |

## <u>SENTENCING MEMORANDUM</u>

Eric D. Vandevelde
Nicole Butze
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7186

Patrick A. Casey
John B. Dempsey
Myers, Brier & Kelly, LLP
425 Biden Street, Suite 200
Scranton, PA 18503
(570) 342-6100

*Attorneys for Defendant,*
*Waylon Wilcox*

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................................1

II.    STAGES OF SENTENCING................................................................................5

  A.    STAGE 1:  Sentencing Guideline Calculation. ..............................................6

  B.    STAGE 2: Departures from the Guidelines.....................................................7

  C.    STAGE 3:  Consideration of § 3553(a) Factors. ............................................7

    1.    The nature and circumstances of the offense and the history and characteristics of Defendant.  18 U.S.C. § 3553(a)(1). .......................................7

    2.    The need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the office, and afford adequate deterrence to criminal conduct.  18 U.S.C. § 3553(a)(2)(A) and (B). ......................................9

    3.    The need to protect the public from further crimes of the defendant and to provide needed educational training or medical care.  18 U.S.C. § 3553(a)(2)(C) and (D)...................................................................................15

    4.    The kinds of sentences available.  18 U.S.C. § 3553(a)(3)........................16

    5.    The sentencing Guidelines calculation, policy statement, and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(4),(5) and (6).16

    6.    The need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a)(7). ................................................................................................16

III.    CONCLUSION...................................................................................................17

# TABLE OF AUTHORITIES

## CASES

*Concepcion v. United States*, 597 U.S. 481 (2022) ..................................................5

*Gall v. United States*, 552 U.S. 38 (2007) .........................................................7, 10

*Houghlin-Hernandez v. United States*, 589 U.S. 169 (2020) ...................................7

*Kimbrough v. United States*, 552 U.S. 85 (2007) ...................................................7

*Koon v. United States*, 518 U.S. 81 (1996) ............................................................10

*Nelson v. United States*, 555 U.S. 350 (2009) ........................................................7

*United States v. Ahlgren*, A-24-CR-31-RP (W.D. Tex.) .................................. 12-13

*United States v. Gunter*, 462 F.3d 237 (3d Cir. 2006) .............................................5

*United States v. Jackson*, 467 F.3d 834 (3d Cir. 2006) ...........................................7

*United States v. Lofink*, 564 F.3d 232 (3d Cir. 2009)...............................................6

*United States v. Olhovsky*, 562 F.3d 530 (3d Cir. 2009) .........................................9

*United States v. Oligmueller*, 198 F.3d 669 (8th Cir. 1999) ..................................16

## STATUTES

18 U.S.C. § 3553........................................................................................................17

18 U.S.C. § 3553(a) ............................................................................................4, 5, 7

18 U.S.C. § 3553(a)(1) ..............................................................................................8

18 U.S.C. § 3553(a)(2) ..............................................................................................4

18 U.S.C. § 3553(a)(2)(A) ........................................................................................9

18 U.S.C. § 3553(a)(2)(B) ..............................................................................................9

18 U.S.C. § 3553(a)(2)(C) ............................................................................................15

18 U.S.C. § 3553(a)(2)(D) ............................................................................................15

18 U.S.C. § 3553(a)(3) ..................................................................................................16

18 U.S.C. § 3553(a)(4) ..................................................................................................16

18 U.S.C. § 3553(a)(5) ..................................................................................................16

18 U.S.C. § 3553(a)(6) ..................................................................................................16

18 U.S.C. § 3553(a)(7) ..................................................................................................16

18 U.S.C. § 3561 ...........................................................................................................16

18 U.S.C. § 3571(b)(3) ....................................................................................................6

## UNITED STATES SENTENCING GUIDELINES

U.S.S.G. § 2T1.1(a)(1).....................................................................................................6

U.S.S.G. § 2T4.1(I) ..........................................................................................................6

U.S.S.G. § 3E1.1(a) ..........................................................................................................6

U.S.S.G. § 3E1.1(b) ..........................................................................................................6

U.S.S.G. § 4C1.1................................................................................................................6

U.S.S.G. § 5E1.2(c)(3) ......................................................................................................6

U.S.S.G. § 5K1.1................................................................................................................5

I.      **INTRODUCTION**

Waylon Wilcox acknowledges that he submitted false tax returns for tax years 2021 and 2022 by answering "no" to the question regarding virtual currency or other digital asset transactions, and by failing to fully report and pay tax on significant gains from cryptocurrency sales. Mr. Wilcox "recognize(s) the seriousness of [this] conduct," understands that he alone is at fault for his actions, and "accept[s] responsibility for it."  (Wilcox Acceptance of Responsibility) (cited in Presentence Investigation Report or "PSR" ¶ 23).  When confronted by the IRS, Mr. Wilcox immediately admitted those false statements to the IRS, moved swiftly to amend his returns (with the assistance of tax professionals specializing in cryptocurrency transactions), paid all taxes and interest owed, assisted the government in its investigation of his conduct and otherwise, and pled guilty—all before this case was filed.

In contrast to the actions that bring him before this Court, Mr. Wilcox has lived a remarkable life of survival, hard work, self-determination, and loyalty, through unimaginable challenges in a home overpowered by an abusive father suffering from addiction and depression.  Consistent with an observation offered by

his sister, Delilah, who sacrificed and survived alongside her brothers, Mr. Wilcox continues, through how he has responded this event, "to try to make amends."[1]

Mr. Wilcox developed an interest in digital art and cryptocurrency in his late 30s and early 40s at a time when he was living with his mother, Carol, and his twin brother, Dylan, in the family trailer. Mr. Wilcox began contributing a significant portion of his personal time and very modest, but hard-earned income from labor-intensive jobs to learning about and acquiring cryptocurrency, including digital artwork in the form of "non-fungible tokens," or "NFTs," called CryptoPunks, which he acquired in 2017. Each CryptoPunk token contains a unique, collectible piece of digital art whose ownership and authenticity are recorded on the blockchain.

Mr. Wilcox did not acquire CryptoPunks with the expectation that they would become highly profitable investments—indeed, they had virtually no, or at best a *de minimis*, value for several years. Instead, he was genuinely fascinated by and appreciated the digital art they represented. The cryptocurrency market—and values of certain NFTs, and CryptoPunks, in particular—appreciated dramatically in 2021 and 2022. As a result, Mr. Wilcox incurred tax reporting obligations on his

---

[1] Carol, Delilah, and Dylan Wilcox recorded video statements that have been submitted to the Court under seal to protect the sensitive personal nature of the information. Delilah identified Waylon's remarkable capacity to forgive and then reconcile with his father, despite a childhood lost to his father's abuse and addiction. (*See* Delilah Wilcox, April 7, 2026 at 23:07-23:40) (filed under seal with Personal Background of Waylon Wilcox as Exhibit "B.")

transactions, requiring an intensive cost-basis tracing exercise to accurately determine his cost basis and gains across his digital asset activity. Although Mr. Wilcox did report some cryptocurrency income on his 2021 and 2022 tax returns, [2] he acknowledges he failed to perform that cost-basis tracing exercise and thus failed to accurately report and pay taxes.

When confronted at his home by IRS CID Agent John Maiolo on June 27, 2024, Mr. Wilcox immediately and without qualification accepted responsibility. He did so before requesting or engaging legal counsel, and despite Agent Maiolo telling him that he was "free to leave."  (*See* Memoranda of Interviews) (filed under seal with Personal Background of Waylon Wilcox as Exhibits "F" and "G.")  Mr. Wilcox subsequently engaged a tax professional specializing in cryptocurrency to calculate his complete tax liability and paid taxes in an amount *exceeding* that alleged by the Government, together with interest, in an effort to fully compensate the Government for its loss.

Along with the above, we request that this Court also consider the unvarnished video statements of his mother Carol, his sister Delilah, and his twin brother Dylan, which best capture—for good and bad—the history and characteristics of Mr. Wilcox in a family that has persevered because of togetherness, hard work, and

---

[2] Mr. Wilcox reported and paid taxes on cryptocurrency "staking" income, akin to but *not* a form of "interest," for digital assets he held at the cryptocurrency bank, Celsius Network.  (*See* II.C.2, *infra*).

grace. Much in the record before this Court confirms that Mr. Wilcox has led a life of resilience, industriousness, trustworthiness, and transparency in the face of incredibly difficult family circumstances, including the description of his life and character offered by his sister Delilah:

> Always loyal. I trust him with everything that I have. Never knew him to be sneaky. Never knew him to be a cheat. Never knew him to be lazy at all. He always worked. He was always working. We always worked. Come fifteen you were working, and making money so you could kind of, again, find a life . . . make a life, because we did not have much opportunity to do that. There was not a lot of support, so they [Waylon and his twin brother Dylan] knew they had to do it. And like I said, him and my brother Dylan also just held each other up the whole time. Always there for me when I needed him.

(*See* Delilah Wilcox, April 7, 2026 at 23:38-24:15) (filed under seal with Personal Background of Waylon Wilcox as Exhibit "B.")

In letters submitted to Your Honor[3] by family, by Katie Ocker and her parents, who speak to the love and stability that Mr. Wilcox has brought to Ms. Ocker's young children, and by close friends and co-workers, the Court has received strong statements to Mr. Wilcox's life and character. Respecting the critical power that this Court exercises to determine a "sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]," 18 U.S.C.

---

[3] The referenced character letters regarding Waylon Wilcox have been attached hereto as Exhibits 1 through 6 for the Court's consideration.

§ 3553(a), undersigned counsel submits this Sentencing Memorandum for Your Honor's consideration and respectfully requests that the Court impose a sentence of probation.

## II.   STAGES OF SENTENCING

The Supreme Court has recognized that "a federal judge in deciding to impose a sentence 'may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.' [citation omitted]." *Concepcion v. United States*, 597 U.S. 481, 492 (2022). Generally, no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense when deciding what sentence to impose. *Id.* at 494.

Precedential guidance for district courts historically required engagement in a three-step process when determining an appropriate sentence. First, the Court must calculate the applicable Guideline range. *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). Second, the Court determines the basis for any requested departure, and if a departure is warranted, announces the effect of that departure on Guideline calculation. *Id.* The defense anticipates that the Government will move for a downward departure based on substantial assistance, U.S.S.G. § 5K1.1. Finally, after considering all factors in accordance with 18 U.S.C. § 3553(a), the Court must

impose an appropriate sentence, which may vary from the Guideline range.  *Id.*; *see also United States v. Lofink*, 564 F.3d 232, 240 (3d Cir. 2009).

## A.    STAGE 1:  Sentencing Guideline Calculation.

Without objection from the Government or Mr. Wilcox, the United States Probation Office calculated the advisory sentencing Guidelines as follows:

| Guideline Section | Description | Adjusted Offense Level |
|---|---|---|
| U.S.S.G. §§ 2T1.1(a)(1) and 2T4.1(I) (PSR ¶ 26) | Base Offense Level based upon tax loss of $3,305,238 | 22 |
| U.S.S.G. § 3E1.1(a) and (b) (PSR ¶ 32) | Acceptance of responsibility | -3 |
| U.S.S.G. § 4C1.1 (PSR ¶ 33) | Zero criminal history points | -2 |
| Total Adjusted Offense Level | | 17 |
| Advisory Range | Based upon a total offense level 17 and criminal history category 1 | Advisory 24-30 months (Zone D) |
| Restitution (PSR ¶ 78) | Restitution was fully paid[4] | $3,305,237 |
| 18 U.S.C. § 3571(b)(3), Statutory Maximum Fine (PSR ¶ 72) | Statutory maximum fine | $500,000 |
| U.S.S.G. § 5E1.2(c)(3), Guideline Fine Range (PSR ¶ 74) | Advisory Guideline Fine Range | $10,000-$95,000 |

---

[4] Proof of payment is included at the end of Mr. Wilcox's Amended 1040 2021 and Amended 1040 2022 and references the Statements of Digital Asset Transactions attached thereto (filed under seal with Personal Background of Waylon Wilcox as Exhibits "D" and "E.")

**B.     STAGE 2: Departures from the Guidelines.**

Mr. Wilcox anticipates that the Government will move for a downward sentencing reduction, thus reducing the advisory Guidelines range stated above.

**C.     STAGE 3:  Consideration of § 3553(a) Factors.**

Mr. Wilcox requests the Court exercise its discretion and issue a downward variance from the advisory Guideline range.  *Kimbrough v. United States*, 552 U.S. 85, 109 (2007); *United States v. Jackson*, 467 F.3d 834, 838-41 (3d Cir. 2006).  The Guidelines are not mandatory, and "in considering how the various sentencing factors apply to an individual defendant, [the sentencing court] 'may not presume that the Guidelines range is reasonable.'"  *Nelson v. United States*, 555 U.S. 350, 352 (2009) (citing *Gall v. United States*, 552 U.S. 38, 58-60 (2007)).  The objective is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in § 3553(a), including just punishment, deterrence, protection of the public, and rehabilitation.  *Kimbrough*, 552 U.S. at 101; *Houghlin-Hernandez v. United States*, 589 U.S. 169, 173 (2020).

> **1. The nature and circumstances of the offense and the history and characteristics of Defendant.   18 U.S.C. § 3553(a)(1).**

Mr. Wilcox admits that his offenses are serious.  He filed false tax returns with the IRS.  He deprived the IRS of truthful responses and of tax monies to which it

was entitled.   Although not a violent crime, Mr. Wilcox committed a crime of dishonesty.   The Guidelines evaluate criminal offenses based upon the tax loss, sophistication, and the defendant's criminal history.   The Guidelines determination results in an advisory range of 24-30 months.   However, as set forth in counsel's sealed submission with the Court, Mr. Wilcox's history and characteristics reflect a childhood, family life, education, and work history impacted by a father's abuse and addiction.   The under-seal filings and powerful character letters reflect Mr. Wilcox's life of kindness, self-reliance, diligent hard work, and a capacity for forgiveness and loyalty that is unique.   Mr. Wilcox's life goals are to return a measure of the kindness and loyalty that he received from his mother, his sister, and his brother, and to provide a sense of stability, safety, and comfort to family, to Ms. Ocker, and to her children.

Carol Wilcox identified her son's poor decision-making under pressure, his failure to grapple with the magnitude of his legal obligations by engaging an accountant, and some depression due to the loss of his relationship with Ms. Ocker during 2022, as likely contributors to his criminal conduct. (*See* Carol Wilcox, April 7, 2026 at 23:38-24:15) (filed under seal with Personal Background of Waylon Wilcox as Exhibit "A").   Those factors are appropriately considered under § 3553(a)(1), and the defense calls further attention to, as discussed at the outset, the uniquely complex tax accounting needed to properly determine "cost-basis" and

8

"gain" in digital currency transactions and to the developing regulatory reporting requirements.  (*See* II.C.2.)  Most fundamentally, from the moment that agents arrived at his home on June 27, 2024, Mr. Wilcox has transparently accepted responsibility, assisted the Government in confirming details of the tax issues and otherwise, paid all taxes and interest owed, and pled guilty (all before this case was filed), appearing dutifully before the Court and complying with all terms of pretrial release since.  Accordingly, Mr. Wilcox's commendable traits for candor, for honesty, for accepting responsibility, for helping others, and for making amends are relevant to the imposition of a mitigated sentence.

> **2. The need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the office, and afford adequate deterrence to criminal conduct.  18 U.S.C. § 3553(a)(2)(A) and (B).**

When imposing a sentence that reflects the seriousness of the offense, promotes respect for law, and provides just punishment, the sentencing Court recognizes that ". . . it is not *severe* punishment that promotes respect for the law, it is *appropriate* punishment." *United States v. Olhovsky*, 562 F.3d 530, 551 (3d Cir. 2009) (emphasis in original). A sentence of imprisonment is *not* necessary to promote respect for the law, to provide just punishment, or to send a message that deters Mr. Wilcox or others.  The Department of Justice has recognized that it is the likelihood of detection and punishment that serves as a deterrent to crime, not the severity of punishment imposed for the offense. *See e.g.*, National Institute of Justice, "Five Things About

9

Deterrence" (U.S. Department of Justice, May 2016).  Those deterrents have been accomplished. The Court recognized in *Gall v. United States* that "'[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'"  *Gall,* 552 U.S. at 52 (2007) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)). In imposing an individualized sentence in this case, imprisonment does not promote the goals of sentencing.

Mr. Wilcox did not wholly disregard his obligation to identify and pay tax on digital transactions in 2021 and 2022.  Both returns reported cryptocurrency "staking" income reflected on Schedule C. (*See* IRS Form 1040 2021 at line 8 and Schedules 1, C, SE, PA-40 2021 at line 4; *see also* IRS Form 1040 2022 at line 8 and Schedules 1, C, SE, PA-40 2022 at lines 1a and 4) (filed under seal with Personal Background of Waylon Wilcox as Exhibits "D" and "E").  The returns identified Mr. Wilcox's profits in the form of "lending" or "rewards" credited by Celsius Network, and Mr. Wilcox reported and actually took disadvantageous tax positions on that income.[5]

---

[5] On his 2021 and 2022 returns, Mr. Wilcox included gross receipts from a business described as a "lending" or "rewards" on Schedule C.  The income on Schedule C was derived from digital asset staking rewards.  Reporting this income on Schedule C subjected Mr. Wilcox to self-employment tax at a rate of 12.4%, as opposed to the 3.8% Net Investment Income Tax that may otherwise apply to passive investment income.  As for the 2022 Pennsylvania return, Mr. Wilcox also reported

Significantly, Mr. Wilcox reported and paid tax on the staking income in 2022 even though Celsius Network had frozen customer accounts amid plummeting cryptocurrency values on June 12, 2022, then filed for bankruptcy protection, and ultimately saw its founder and CEO plead guilty to widescale fraud. *See* Vermont Department of Financial Regulation Investor Alert on July 14, 2022 (https://dfr.vermont.gov/consumer-alert/celsius-network-files-chapter-11-bankruptcy); *see also* July 13, 2023 Press Release by the Department of Justice (https://www.justice.gov/usao-sdny/pr/celsius-founder-and-former-chief-revenue-officer-charged-connection-multibillion.)

In addition, since first being confronted by the IRS, Mr. Wilcox has demonstrated respect for the law and for the criminal justice system in all of his interactions with the Government and Court. When law enforcement executed the search warrant on June 27, 2024, Mr. Wilcox cooperated and assisted law enforcement before engaging counsel. Shortly after engaging counsel, Mr. Wilcox retained the

---

duplicate digital asset staking rewards income. Specifically, Mr. Wilcox reported $225,599 on line 1a as "gross compensation" and separately reported $216,959 on line 4 as "net income or loss from operation of a business," resulting in a total reported income of $442,558. The amount reported on line 4 corresponds to the Schedule C income reported on Mr. Wilcox's federal return. But, as shown on Mr. Wilcox's 2022 Form 1040, the reported $225,599 already included the reported digital asset income reported on his Schedule C. Therefore, when Mr. Wilcox filed his original Pennsylvania Return reporting $442,558 in total taxable income, he double reported his original reported digital asset income.

co-founder and CEO of TokenTax to amend his returns and—pursuant to a proffer agreement and for the purposes of properly calculating restitution even before criminal charges were filed in this case—the Government accepted Mr. Wilcox's numbers, which identified a tax deficiency beyond what the Government asserted was the criminal tax loss.  To illustrate the complexity of the accounting involved, Mr. Wilcox filed the Amended 1040 2021 and Amended 1040 2022 and references the Statements of Digital Asset Transactions attached thereto (filed under seal with Personal Background of Waylon Wilcox as Exhibits "D" and "E.")

On February 6, 2024, the Government filed its "first criminal tax case that charged an individual [Frank Richard Ahlgren, III] who filed false tax returns that underreported and did not report gains from the sale of cryptocurrency" in the United States District Court for the Western District of Texas.  *See* Government Sentencing Memorandum at 1, *United States v. Ahlgren*, Case No. A-24-CR-31-RP (W.D. Tex. Dec. 6, 2024) (ECF 40) (attached hereto as Exhibit 7).  In its Sentencing Memorandum as to Mr. Ahlgren, the Government identified numerous badges of fraud[6] that are not present in this case.

---

[6] The Government asserted that Mr. Ahlgren lied to his accountant about his cost basis in bitcoin and then ignored his accountant's instructions to be honest with the IRS.  (*See* Government Sentencing Memorandum, *United States v. Ahlgren*, at 1, 6, and 7.)  Mr. Ahlgren concealed his transactions on the blockchain with the use of sophisticated peer-to-peer exchanges and by structuring deposits to evade reporting requirements, and then filed returns that falsely inflated his cost basis in the subject bitcoins to falsely lower his tax liabilities.  *Id.* at 1, 4, and 5.  When the

Furthermore, it is relevant to the imposition of a sentence that the cryptocurrency accounting necessary to determine basis and gain for tax reporting purposes is uniquely complex and the laws surrounding cryptocurrency reporting are dynamic. Prior to January 1, 2026, Congress did not require brokers to issue 1099s for cryptocurrency transactions, leaving taxpayers with the uphill burden of engaging in an intensive cost-basis tracing exercise that even most certified public accountants cannot perform. *See* IRS.gov, Instructions for Form 1099-DA, available at https://www.irs.gov/instructions/i1099da. During the time period at issue, Mr.

---

Government executed a search warrant, Mr. Ahlgren was already detained for civil contempt in refusing compliance with multiple state court orders to produce his cryptocurrency wallets and was deemed to be a serious flight risk. *Id.* at 4. After the Government executed the warrant, Mr. Ahlgren allegedly moved approximately $76 *million* in bitcoin, later rising to $123 *million* in value at the same time that he falsely reported that he had zero assets to the United States Probation Office. (*Id.* at 15.) In contrast to Mr. Ahlgren, Mr. Wilcox transacted in a manner that was far more transparent. He named his primary wallet "Wilcox.eth," utilized "Wilcox_NFT" as his X account, and used "Wilcoxwaylon@gmail.com" as his email address. When Mr. Wilcox moved funds into his M&T Bank Account in 2022 to purchase a home with his girlfriend and her children, Mr. Wilcox did not misrepresent the source of funds to the bank. Mr. Wilcox also did not lie to an accountant or disregard professional advice; to the contrary, Mr. Wilcox failed to engage professionals and instead unwisely prepared his own returns during the relevant years. As noted above, Mr. Wilcox responded transparently and cooperatively when confronted by the Government. He provided wallets, PINs, and related account information and admitted that he had not paid tax on his cryptocurrency transactions and confirmed that he wanted to make that right. He then quickly engaged legal counsel, engaged with the Government, retained tax professionals specializing in cryptocurrency, recalculated his taxes, and, by January 21, 2025, had made full restitution.

Wilcox did not have the benefit of relying on Form 1099s for the necessary cost-basis information required to formulate his taxes due. The implementation of Form 1099-DAs will assist with complicated cost-basis tracing and realization accounting for individual taxpayers or—at the very least—will frame the issue immediately and shift the burden to the taxpayer to prove his basis in real time.

Coinbase, a major centralized cryptocurrency exchange (CEX), adopted updated reporting procedures that will inform customers of their basis, and, as to assets that arrive from a decentralized exchange (DEX) where information could be lacking, Coinbase will assume those units were acquired at the date and time of the transfer and issue a Form 1099-DA that requires the taxpayer to prove a different basis and corresponding adjustment in tax owed:

> If Coinbase does not receive customer-provided acquisition information with respect to digital assets that were transferred into the customer's account or otherwise does not take such information into account, for purposes of trading lot selection, Coinbase must treat those units as acquired as of the date and time of the transfer. This may result in differences between the cost basis reported by Coinbase and a client's actual acquisition cost, making reconciliation particularly important for transferred-in assets.

(*See* https://help.coinbase.com/en/coinbase/taxes/general-information/tax-professionals.) These developing regulatory requirements are likely to mitigate the tax accounting and reporting burdens present in this case. With respect to deterring Mr. Wilcox from filing a false return in the future, Mr. Wilcox has filed and paid all

14

taxes since the inception of this case and ensures that all of his tax returns are accurate and correct by continuing to retain Token Tax to complete his tax returns.

The need to promote respect for the law and to deter further criminal conduct is nullified by Mr. Wilcox's acceptance of responsibility, fulfillment of restitution, and ongoing changes in the cryptocurrency regulatory regime.

> **3. The need to protect the public from further crimes of the defendant and to provide needed educational training or medical care.  18 U.S.C. § 3553(a)(2)(C) and (D).**

Mr. Wilcox survived abuse in his own life at the hands of a father addicted to drugs and alcohol.  Aside from the matter that brings him before the Court, Mr. Wilcox has lived a crime-free life.  He is a "Zero-Point Offender" (PSR ¶33). Despite significant life challenges, Mr. Wilcox has maintained strong relationships with his mother and siblings and has exhibited a strong work ethic.  The Court has heard from his friends and family about the kindness, compassion, and loyalty that Mr. Wilcox demonstrates in his daily life.

Mr. Wilcox is not a recidivism risk, and he is not in need of educational or vocational training, or of medical or mental health care for which incarceration would be effective.

**4.  The kinds of sentences available.  18 U.S.C. § 3553(a)(3).**

Section 3553(a)(3) requires the Court to consider the kinds of sentences available. Pursuant to 18 U.S.C. § 3561 of the United States Code, a probationary sentence is authorized in this case.

**5.  The sentencing Guidelines calculation, policy statement, and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(4), (5) and (6).**

The Guideline calculation is not in dispute, and advisory Guideline range, prior to consideration of an anticipated motion for sentencing reduction by the Government, is 24 to 30 months.  The Government is expected to advance a basis for further sentencing reduction.  Additionally, the defense has identified mitigation factors which support a non-custodial sentence.

**6.  The need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a)(7).**

Mr. Wilcox made full and complete restitution on January 21, 2025.  This factor powerfully favors imposition of a probationary sentence.  *See United States v. Oligmueller*, 198 F.3d 669, 672 (8th Cir. 1999) (affirming downward departure where defendant prepaid 94% of restitution).

16

## III.   **CONCLUSION**

Mr. Wilcox will appear on April 21, 2026, to receive Your Honor's sentence. For the reasons set forth above, undersigned counsel respectfully asserts that a sentence to a term of probation is sufficient, but not greater than necessary, to meet the factors and considerations set forth in 18 U.S.C. § 3553.

Dated: April 14, 2026                                Respectfully submitted,

/s/ Eric D. Vandevelde
Eric D. Vandevelde
Nicole Butze
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7186

/s/ John B. Dempsey
Patrick A. Casey
John B. Dempsey
Myers, Brier & Kelly, LLP
425 Biden Street, Suite 200
Scranton, PA 18503
(570) 342-6100

*Attorneys for Defendant,*
*Waylon Wilcox*

17

## **CERTIFICATE OF SERVICE**

I, John B. Dempsey, hereby certify that a true and correct copy of the foregoing Sentencing Memorandum was served upon the following counsel of record via the Court's ECF system on this 14th day of April 2026:

> Joseph J. Terz, Assistant U.S. Attorney
> U.S. Attorney's Office
> 1501 N. 6th Street
> Harrisburg, PA 17102
> Joseph.Terz@usdog.gov

> /s/ John B. Dempsey
> John B. Dempsey